Christian, J.
This case is brought up by a writ of error to a judgment of the circuit court of the city of Richmond.
The defendant in error, in the year 1872, insured his dwelling-house in the town of Chatham, in the county of Pittsylvania, in the company of the plaintiff in error (The Southern Mutual Insurance Company), to the amount of $3,000. The house was destroyed by fire on the 6tff of November, 1872.
*741 Suit was instituted against the company in the’circuit court of the city of Richmond, and a jury being waived, and the matters of law and fact being submitted to the court, a judgment was rendered against the company for the sum of $3,000, with interest from the 1st day of April, 1873, till paid.
To this judgment a writ of error was awarded by this court.
■ The case was argued very elaborately here, both orally and in printed briefs. Numerous objections and points of difficulty were suggested in argument by the able counsel for the company. It is not necessary to notice them all in this opinion.
If the judgment in this case can be successfully assailed, it can only be done upon one of the three grounds of error set forth in the petition filed by the company.
These three assignments of error are as follows, and will now be considered in the order of their assignment:-
1. It is insisted that the policy of insurance in this case is a contract of warranty; and being a warranty, it is of no consequence whether the facts stated or the act stipulated for are material to the risk or not.
2. It is contended with great earnestness that if the court should hold that the application with the questions and answers do not constitute a warranty, but are to be treated as representations only, then it is insisted “ that they are false misrepresentations, and that the plaintiff practised a fraud” upon the company.
3. That the damages given by the judgment of the court are excessive.
First, then, we have to determine whether the policy in this case contains a contract of warranty, and the extent and effect of that warranty.
It is well settled by numerous decisions that where the application and conditions annexed are referred to in the policy, they form a part of it, and are to be con *742 sidered *as if incorporated in the policy itself. In the case before ns we must look first, therefore, to the policy . to see how far reference is had to the application, and determine the obligations of the insured as stipulated in the application with respect to matters referred to in the-policy.
The policy in this case contains the following provisions :
“By this policy of insurance, the Southern Mutual Insurance Company of Richmond, Virginia, in consideration of seventy-two dollars and fifty cents to them paid by the insured hereafter named, the receipt whereof is hereby acknowledged and a premium note of- dollars and -cents by the said company received, do insure Charles Edward Kloeher, of Pittsylvania county, and state of Virginia, against loss or damage by fire and lightning, to the amount of $3,000 on the following property, to-wit: his two-story brick and tinned dwelling-house 45x215, situated in said county on the west side of the public road leading from Chatham to Lynchburg; Va. Eor a more particular description and as forming part of this policy, by which the injured will be bound, reference being had to application and description No. 7,721 on file in the office of this company.”
The application, after setting forth the estimated value of the house insured, contains eighteen specific questions and answers, and following these questions and answers is the following stipulation: “And the said applicant covenants and agrees with said company that the foregoing, together with the diagram hereupon, is a faithful and true exposition of all the facts and circumstances in regardto.the condition, situation, value and risk of the property to he insured.”
In this application the ninth and tenth questions are as follows: “ Ninth question: What is your title to *743 or interest„in the property to be insured ? Answer: Fee simple. Tenth question : Is your property incumbered? By what, to whom and what amount? Answer: Vendor’s lien of about §8,500.”
It is insisted that these questions and answers constitute a warranty, and that the application being referred to in the policy forms a part of it, and contains an express warranty that these answers are in every respect true. It is to be noted that neither in the application nor in the policy is the word warranty or any other word of similar import to be found. The only part of the policy which refers to the application, and the only words in the policy upon which a warranty can be predicated, are as follows: “ For a more particular description and as forming part of this policy, by which the insured will be bound, reference being had to application and description Ho. 7721, on file in the office of this company”; and the stipulation in the application is limited to “the condition, situation, value and risk of the property insured.”
It is doubtful, to say the least, if this stipulation, together with the questions and answers, constitute a toarranty, whether such warranty extends to and covers the interest in and title to the property. Conceding that it does, was there a breach of the warranty in the fact that Mrs. Hall, the wife of Kloeber’s vendor, had a contingent right of dower in the house and lot purchased by Kloeber ? There can be no breach of the warranty unless the statement averred in the warranty is shown to be false. The ninth question is, Wliat is your title to or interest in the property to be insured ? The answer is, Fee simple. How, this answer is strictly true. Mrs. Hall’s undefined and contingent right of dower—a right and interest dependent upon the contingency of her surviving- her husband—certainly did not affect the character of the interest or title which *744 Xloeber had in the property. Although she had the contingent right to assert her claim of dower against the property if she should survive her husband, still the estate.in Ivloeber was a fee simple estate in the sense in which he makes the answer. The questions to which he subscribed his answers were printed questions, and under the ninth question submitted to him were also printed the words, “ See fourth remark to agents on back of application.” This “fourth remark” is as follows: “ In answer to question nine, agents must require applicant to state precisely what his title is—whether fee simple or otherwise, if realty be the subject of insurance; or whether absolute or otherwise, if personalty be the subject.” So that the question was limited as to the character of his title and nature of his interest. His answer, “ Fee simple,” ivas, in the sense in which the question ivas asked and answered, strictly true; and it was no breach of the warranty (if warranty it be), to show that Mrs. Hall, whose husband was still living and might survive her (-when her right would vanish) had nevér united in the deed to lOoeber’s vendor. That claim, if it ever arose and was ever asserted, could not change the nature and character of the estate in Kloeber. It would still be an equitable fee simple estate.
JBut it is insisted that there was a breach of the warranty contained in the answer to the tenth question, which reads as follows: “10. Is your property incumbered ? By what, to whom and what amount ? ” “Answer: Vendor’s lien of about $3,500.” It is earnestly argued that Mrs. Hall’s contingent right of dower was an incumbrance on the property; that the answer was false, and. the warranty was broken, and the policy therefore void. I .am of opinion that this contingent right of dower was not such an incumbrance as was contemplated either by the company or the insured. The very language in *745 which the question is put indicates that it had reference to specific liens or incumbrances, capable of being described and estimated. “Is your property incumbered ? ■ By what, to whom, and what amount ? ” This the moi’e certainly appears when reference is made to the instruction given by this company to its agents in reference to “ incumbered” property. This instruction is as follows:
“ § 8. When property is incumbered, state the whole value of the premises, and also the amount of the incumbrance, and to whom; and never insure on buildings that are incumbered more than the applicant’s interest in the property, unless he will agree in the application to assign the policy to the mortgagee as collateral security for the same, and pay one dollar as recording fee to the agent, and the secretary will then fill up the blank assignment on the policy, and record it at the time the policy is issued.”
Now, these stipulations in a policy of insurance, even when they amount to warranties, must be reasonably construed, and like all other contracts, with reference to the subject of the contract and intention of the parties.
Now such an inchoate, contingent right of dower, as was in Mrs. Hall, is defined by Bishop as a mere possibility ; not only is it no estate, but the right itself is a mere contingent possible thing. If the wife dies before her husband, all is vanished.
Judge Baldivin defines such a right in the wife as an emanation from the ownership of her husband. See Wilson v. Davidson, 2 Rob. R. 384, 405. Before assignment, even after the death of husband, the widow has no estate in the lands of-her husband. It is a mere chose in action, and before assignment is strictly a claim. Greenl. Cruise Tit. Dower, ch. 3. § 1; 4 Munf. 382; 4 Seld. N. Y. 110. In a recent Missouri case, Bliss, J., observed of this sort of inchoate dower that it “ is not an estate, but *746 a mere contingent claim, not capable of sale in execution, nor the subject of grant or assignment. The dowress has merely a contingent possibility of interest in the premises, but no property, no actual interest in it which is the subject of grant or assignment.” 44 Missouri, 512, 515; see also 2 Bishop on Law of Married Women, § 348, and cases cited.
Formerly it was questioned even whether the existence of this inchoate dower could be alleged as a breach of warranty in a deed against incumbrances. And while the modern authorities hold that a covenant in a deed against incumbrances would embrace the inchoate-right of dower, pone cán be found which hold that in a policy of insurance the word incumbrance would embrace such a claim or interest as a contingent right of a woman whose husband is still living. It is plain that in this case no such claim or interest was provided against. The very words used, “ of incumbered, by what, to -whom, and to whit amount,” show beyond all question, when taken in connection with the instructions to the agents of the company, that reference was had to specific liens or incumbrances which could be defined, identified and estimated, and not to a mere contingent possibility of interest which would require a skilled commissioner in chancery to ascertain its value, if any it had.
I am, therefore, of opinion that the answer of the plaintiff in error to this question, viz: “vendor’s lien of about §3,500,” was strictly true, and that there was no breach of warranty in 'the fact that Mrs. Hall had an inchoate right of dower in the premises dependent upon her surviving her husband. The first assignment of error of breach of warranty is not well taken.
But it .is insisted as a second ground of error, that the policy is voided because of the concealment or omission on the part of the insured to state this alleged incutn *747 brance. Two sufficient answers may be made to this objection :
First. By the terms of the policy the omission or concealment which will void the policy must be of such facts as are material to the risk or increases the hazard. Evidence is abundant in the record, even the deposition of the president of the company, to show that the concealment of the fact of Mrs. Hall’s contingent claim was not material, and could not possibly increase the risk.
Second. If, as already shown, the stipulations in this policy amount to a warranty, there has been no breach which voids the policy, it follows, a fortiori, that the mere concealment or omission to state the fact constituting the alleged breach cannot render the policy void.
The third and last assignment of error to be noticed is that the damages were excessive. It is to be noted that the facts are not certified, but only the evidence. The evidence is conflicting on the question of the value of the building; and whether we regard the certificate of evidence as a demurrer to evidence, or adopt the rule in Mitchell v. Baratía, it is difficult to see how this court can interfere with the judgment of the court below upon the question of the quantum of damages. The circuit court estimated the value of the buildings at $9,000. The judgment in this ease and the Va. Fire Marine v. Same defendant in error, post p. 749, was each $8,000, being two-thirds of the value. There is certainly evidence in the record tending to show that at the time of the fire the building was worth $9,000. In the first place it may be noted that the agent of the company personally inspected the building and wrote down its value as stated by the insured, at $10,000. It was proved by the former owner that the actual cost of the building was $7,500. It was further proved that the property had greatly enhanced in value between the date of its erection and the date of the fire. It was further proved by an experienced archi *748 tecfc that to replace the building with similar materials, after the fire, would require at least twenty per cent, on . the original cost, which would be exactly the amount fixed upon by the court as its true value. Upon this evidence this court could not, according to well-established principles, reverse the judgment, even though we might be of opinion that the damages were a larger amount than this court would have assessed them.
In a recent case (Southern Mat. Ins. Co. v. Trear, 29 Gratt. 255), when a similar question of excessive damages was raised, it was said: “The question before the jury upon the evidence was only as to the question of damages, and though the court, if on the jury, might have been for a much less amount of damages than was found by the jury, yet it was a question of fact for the jury, and there was evidence before them tending to show that the amount of damages actually sustained was at least equal to the amount found by the jury. Although there was also evidence before the jury, strongly tending to show that the building insured was actually of much less value than that at which it was fixed by the agent of the defendant at the time of the insurance, and more than that at which it was estimated by the jury assessing the damage in the case, yet the verdict of the jury was legally warranted by the evidence, and cannot therefore be set aside by the court upon the ground that it was contrary to the evidence.”
Upon the whole case, lam of opinion that there is no error in the judgment of the circuit court, and that the same should be affirmed.
Anderson, Staples and Burks, J’s, concurred in the opinion of Christian, J.
Moncure, P., dissented.
Judgment affirmed.